**TRILON EDUCATIONAL CORPORATION**

v.

**The UNITED STATES.**

No. 241–76.

United States Court of Claims.

June 14, 1978.

Maurice H. Bitner, Parsippany, N. J., attorney of record for plaintiff.

Raymond B. Benzinger, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before NICHOLS, KASHIWA, and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

This case, before the court on cross-motions for summary judgment, concerns a naval procurement contract. Defendant cancelled it, six weeks after award, for nonresponsibility of the contractor. Plaintiff seeks recovery of costs incurred in preparing to perform and anticipatory profits, totaling $58,000. Defendant disclaims all liability on the ground that plaintiff's nonresponsibility rendered the contract void.

The invitation for bids (IFB) in this case was for the manufacture of small arms gunfire flash-noise simulators, and was issued by the Naval Training Equipment Center in Orlando, Florida, on May 29, 1974. Although the IFB was sent to 22 companies, only two responded. Of these, plaintiff, Trilon Educational Corp., was the lowest bidder for the quantities desired by the Navy. The contracting officer determined that Trilon was responsible, and awarded the contract on June 26, 1974. The contract was signed the same day. Immediately thereafter, plaintiff placed purchase orders for materials and undertook alteration of its production capacity to assure shipments in accordance with the contract delivery schedule.

In the meantime, the unsuccessful bidder, Joanell Laboratories, formally protested Trilon's award on June 28, 1974, and followed with a letter to the Comptroller General of the United States, dated July 12, 1974. Joanell alleged that Trilon should have been adjudged nonresponsible because of the recent criminal conviction of Mr. Neile Coe, President of Trilon Research Corporation, of which Trilon Educational Corporation was a subsidiary, for conspiring to defraud the government in connection with subcontract awards. Coe pleaded guilty to the charges which arose out of the Grumman Aircraft Kickback scandal, on April 2, 1974, and was sentenced on June 27, 1974. Joanell further noted that this information could easily have been uncovered by the contracting officer simply by telephoning the local Defense Contract Administration Office.

The contracting officer notified plaintiff by telegram, on August 8, 1974, that the contract was cancelled, effective immediately. Plaintiff, operating on the assumption that the cancellation was to be treated as a termination for convenience, submitted a termination settlement proposal to the government. This was rejected out of hand, the government adopting the position that the circumstances of plaintiff's nonresponsibility made the contract illegal, thereby preventing the existence of any rights thereunder.

In its cross-motion for summary judgment defendant offers several interrelated theories in support of its position that the cancellation was valid and released the government from all liability to plaintiff. The major argument is that the contract award was improper and clearly illegal, and

therefore was not enforceable under *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961). That case involved a conflict of interest and has never been held to apply to every instance of award irregularity. *Schoenbrod v. United States,* 410 F.2d 400, 187 Ct.Cl. 627 (1969); *Prestex, Inc. v. United States,* 320 F.2d 367, 162 Ct.Cl. 620 (1963), are closer to our facts but not on point. Defendant's argument subsumes two others. One is that the contracting officer simply did not have the authority, under the Armed Services Procurement Regulations (ASPR), and in particular ASPR 1–902 *et seq.,* to award the contract to Trilon. The second is that plaintiff should have disclosed its ineligibility to the contracting officer before accepting the contract.

The criteria to be applied in determining the responsibility of prospective contractors are delineated in part 9 of section 1 of ASPR. The pertinent ASPR provisions are set forth in full in the appendix following this opinion. The object of part 9 is to ensure that potential contractors are qualified to perform the work or services sought. To this end, awards may be made only to "responsible prospective contractors" after the contracting officer has made an affirmative determination in this regard, based on the standards enumerated in the ASPR. Under ASPR 1–903.1, to be qualified for an award a contractor must at minimum be able to command adequate financial resources and have available enough plant capacity and equipment to perform the contract and comply with delivery schedules. In addition, the prospective contractor must have satisfactory records of performance and integrity. ASPR 1–904.1 further provides that "[t]he signing of the contract by the contracting officer constitutes [an affirmative determination of responsibility] * * *; therefore he must assure himself that the applicable requirements of 1–903 are met before signing the contract or order." Finally, "[b]efore making a determination of responsibility (see 1–904), the contracting officer shall have in his possession

or obtain information sufficient to satisfy himself that a prospective contractor currently meets the minimum standards set forth in 1–903, to the extent that such standards are applicable to a specific procurement." ASPR 1–905.1(a).

 Despite what may appear to be a lengthy list of standards to be applied in evaluating the responsibility of a potential contractor, this court and the Comptroller General of the United States have both consistently stated that the regulations invest in the contracting officer a considerable degree of discretion in arriving at a determination. *See, e. g., Keco Industries, Inc. v. United States,* 492 F.2d 1200, 1205–06, 203 Ct.Cl. 566, 577 (1974); *Data Test Corp.,* 54 Comp.Gen. 499 (1974). In *Data Test Corp.,* it was noted that responsibility "determinations are based in large measure on subjective judgments which are not readily susceptible to reasoned review." *Id.* at 501. Absent allegations of fraud or bad faith, then, affirmative determinations of responsibility generally will not be overturned, and ordinarily protests in this regard will not even be entertained. *See Central Metal Products, Inc.,* 54 Comp.Gen. 66 (1974). Although this reasoning usually appears in the context of challenges by unsuccessful bidders, this court has implied that it also is applicable to the recipient of a government contract who later realizes that the favorable responsibility determination as to him was erroneous. *Transcountry Packing Co. v. United States,* 568 F.2d 1333, 1338, 215 Ct.Cl. ——, —— (1978). Similarly, then, the government should also be bound by its own assessment even if it should later conclude that the initial judgment was incorrect.

We now turn to the major thrust of defendant's argument, that the contract was void and illegal because improperly award to a nonresponsible prospective contractor. In essence, defendant would have us hold either that plaintiff is estopped from demanding damages because of its failure to bring Coe's conviction to the attention of

the contracting officer, or that the contract is cancellable without recourse by Trilon.

■ At the outset, we reject the government's implication that Trilon's "suppression" of information pertaining to Mr. Coe's criminal conviction connotes an element of fraud in obtaining the contract. Upon reading the applicable ASPR sections, 1.905.1–.3, we are convinced that absolutely no duty whatsoever devolves upon the bidder voluntarily to proffer such information. Rather, it is unequivocally up to the contracting officer to unearth the facts needed to assess the contractor's responsibility. Moreover, we note that in ASPR 1–905.3 the drafters obligingly recommend several sources for obtaining information concerning prospective contractors. Although the government does not elaborate on the extent of the contracting officer's investigation of Trilon, it does not refute the allegation made by Joanell that a simple telephone call to the local Defense Contract Administration Office would have resulted in the discovery of Mr. Coe's conviction. ASPR 1–905.3(iii) directs the contracting officer to make use of existing information within the Department of Defense. ASPR also suggests that information should be acquired from the prospective contractor as well. It is surprising, then, that Trilon was not asked to submit background information about its key employees. Trilon was entitled to assume that the contracting officer would comply with the directive of the ASPR and make an adequate investigation of Trilon's responsibility. His failure to do so certainly did not obligate Trilon to come forward, unprompted, and volunteer the information. The interpretation advocated by defendant would virtually put potential contract recipients in the position of being forced to make a self-determination of responsibility in order to avoid the risk of rescission if the government later decides the responsibility determination was erroneous. The ASPR does not place such a burden on prospective government contractors, and we therefore decline to hold that plaintiff is estopped from recovering con-

tract damages by some vague notion that this contract resembles something in the nature of an "ill-gotten" gain.

■ We now turn to defendant's alternative argument that the conviction of Trilon's parent's president for fraud in connection with other government contracts irrefutably demonstrates a lack of requisite business integrity on the part of plaintiff, preventing Trilon from qualifying as a responsible bidder in the first instance. From this, defendant reasons that since the regulations unambiguously require that contracts be awarded only to responsible bidders, the attempted award failed, and under the principles developed in *Schoenbrod v. United States, supra,* and *Prestex, Inc. v. United States, supra,* we cannot give effect to the contract.

*Schoenbrod* involved a contract negotiated on the basis of proposals for the processing and selling of Alaska sealskins, submitted by five firms to the Interior Department. Contrary to explicit regulations, the solicitations for proposals failed to request money bids by prospective offerors, and the proposals did not, therefore, reflect pricing considerations. Defendant, moreover, never discussed pricing with any firm other than the one already selected on non-price grounds. The court held that the illegality of the contract was plain on the face of the involved statute and regulations. The contracting officer did not have the authority to award the contract without considering pricing information from all bidders. 410 F.2d at 403–04, 187 Ct.Cl. at 634–35.

A contract award was similarly plainly illegal in view of specific mandatory ASPR provisions regarding the contract in *Prestex, Inc. v. United States, supra.* In bidding under advertised procurement, *Prestex* inserted a handwritten exception to the specifications, to the effect that plaintiff was bidding on an enclosed sample. The sample, as it turned out, deviated materially from the specification. The court allowed the government to cancel the contract on the theory that the contracting

officer's authority is limited to awarding the contract advertised. Since the bid was, in reality, nonresponsive, plaintiff in effect had invited the illegal award, and could not be allowed to hold defendant liable for the expenses accrued in manufacturing a product that did not fit the desired specifications. *See* 320 F.2d at 371, 374–75, 162 Ct.Cl. at 625, 630–31.

■ *Schoenbrod* and *Prestex* both exemplify situations where the departures from applicable statutes and regulations were both obvious to the bidder and so substantial as to require the conclusion that the putative contracts were void *ab initio*. Procurement officers must find their way through a maze of statutes and regulations, which bidders know little about. It would be unfair for them to suffer for every deviation. Therefore, when the deviation is not egregious, the court has preferred to allow the contractor to recover on the ground that the contracts were not palpably illegal to the bidder's eyes. The seminal case in point is *John Reiner & Co. v. United States,* 325 F.2d 438, 163 Ct.Cl. 381 (1963), *cert. denied,* 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964). *See also Albano Cleaners, Inc. v. United States,* 455 F.2d 556, 197 Ct.Cl. 450 (1972); *Warren Brothers Roads Co. v. United States,* 355 F.2d 612, 173 Ct.Cl. 714 (1965); *Coastal Cargo Co. v. United States,* 351 F.2d 1004, 173 Ct.Cl. 259 (1965); *Brown & Son Electric Co. v. United States,* 325 F.2d 446, 163 Ct.Cl. 465 (1963).

The contract in *Reiner* was cancelled because the invitation for bids had permitted bidders to vary the specified time for delivery. The Comptroller General ruled that the IFB was too indefinite to satisfy regulations designed to encourage full and free competition among potential offerors. On review, the court concluded that even though the IFB might not have been in full conformity with the regulations, nevertheless, the illegality was not so obvious as to justify treating the award as a nullity. The court also suggested that when the question of legality is close, the contractor should be accorded the benefit of the doubt, in order to allow the reimbursement of good faith expenditures. 325 F.2d at 440, 163 Ct.Cl. at 386.

■ The *Reiner* rationale has been applied in a case involving the responsibility regulations. *Warren Brothers, supra,* confronted the issue of whether a contract was invalid in light of an erroneous responsibility determination. The lowest bidder on the contract, which was for the manufacture of castings, was disqualified as lacking in integrity, and the contract was awarded to Warren Brothers. The Comptroller General subsequently decided that the lowest bidder had been eligible for the award. The government then asserted that the erroneous responsibility determination rendered the contract void and cancelled it. This court held that the award was not plainly illegal as required under *Reiner.* The court stated:

> * * * The statute and the applicable regulations confer broad discretion on the contracting officer in deciding who is a responsible bidder. * * * If the contracting officer acts in good faith and his award of the contract is reasonable under the law and regulations, his action should be upheld. * * * [355 F.2d at 615, 173 Ct.Cl. at 720.]

We interpret *Warren Brothers* as supporting the proposition that good faith but erroneous responsibility judgments will generally not serve to invalidate a contract award.

Defendant, however, in urging the application of *Schoenbrod,* suggests that in this instance plaintiff's lack of business integrity was so flagrant as to preclude absolutely any reasonable finding that plaintiff was responsible. According to defendant the standards for adjudging integrity are contained in ASPR 1–604, which pertains to the debarment of public contractors. (We note that similar standards obtain in ASPR 1–605, providing the lesser penalty of suspension of firms and individuals.) Under ASPR 1–604, "the Secretary of each Department, or his authorized representative

* * *, is authorized to debar in the public interest a firm or an individual for any of * * * [various] causes * * *." ASPR 1–604.1 lists causes for debarment:

* * * * * *

 (i) conviction by or a judgment obtained in a court of competent jurisdiction for—

 (A) commission of fraud or a criminal offense as an incident to obtaining, attempting to obtain, or in the performance of a public contract;

* * * * * *

 (C) commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, receiving stolen property, or any other offense indicating a lack of business integrity or business honesty which seriously and directly affects the question of present responsibility as a government contractor.

It should be noted, however, that debarment is not mandatory. Rather, "[t]he decision to debar is discretionary; the seriousness of the offense and all mitigating factors should be considered in making the decision to debar." The ASPR is couched in permissive terms. The scope of a debarment may, but not must, include affiliates of a debarred individual, and the "fraud or criminal conduct of an individual may [not must] be imputed to the business firm with which he is connected when the impropriety involved was performed in the course of official duty or with the knowledge or approval of the business firm."

Careful analysis of the debarment provisions suggests that even had the contracting officer been cognizant of Mr. Coe's criminal conviction, he would still not have been compelled to make a determination of nonresponsibility. Of course, subsequent conduct of the government indicates that in fact he might have done so. Nevertheless, just as an individual's criminal conviction leading to debarment need not inevitably be imputed to an affiliated firm, it does not

seem that an individual's lack of integrity should necessarily be attributed to a subsidiary firm for purposes of assessing responsibility. At most, even under ASPR 1–604, a lack of integrity might be imputed. Even if he knew of the criminal conviction, it would have been within the sound discretion of the contracting officer to choose not to impute this to the plaintiff. For this reason, plaintiff's own knowledge of Mr. Coe's conviction was not of itself notice to it that its award was illegal. The *Reiner* standard of plain and palpable illegality is not met.

■ For similar reasons, the fact that the contracting officer may have disregarded the directive of ASPR 1–905, to assemble sufficient information about a prospective contractor to make an educated responsibility determination, as required by ASPR 1–902, does not render the resultant contract a nullity. Concededly, some violations of the applicable regulations are so outrageous as to mandate this result. *See, e. g., Schoenbrod v. United States, supra*; *Prestex, Inc. v. United States, supra*. However, in a recent decision of this court, *E. Walters & Co. v. United States*, Ct.Cl. No. 286–76, 576 F.2d 362 (decided May 17, 1978), it was stated:

 * * * Granted that this * * * [procedure] was clearly prohibited by the procurement regulations, and for good and sufficient policy reasons, the fact that a procurement practice is prohibited does not necessarily mean that it is therefore actionable. The discipline to be administered in such cases is a responsibility of the cognizant procurement officials within the agency in which the violation took place. It is not a type of discipline to be administered by this court, * *. [Footnote omitted—at 367.]

In our view, the possible negligence of the contracting officer, like the improper use of the option provision in *Walters*, is a matter for internal resolution, and does not rise to such a level of impropriety as to require us to punish the other party.

■ Finally, we reach the question of what damages are due to plaintiff. It is now well-settled that when the government mistakenly cancels a contract in the belief that it is invalid, the proper remedy is to convert the termination to one for convenience. Under the termination for convenience clause, the contractor is not entitled to recover anticipated profits. *See, e. g., John Reiner & Co. v. United States, supra,* 325 F.2d at 444, 163 Ct.Cl. at 393. *See also Albano Cleaners, Inc. v. United States,* 455 F.2d 556, 561, 197 Ct.Cl. 450, 460 (1972); *Nesbitt v. United States,* 345 F.2d 583, 586, 170 Ct.Cl. 666, 671 (1965), *cert. denied,* 383 U.S. 926, 86 S.Ct. 931, 15 L.Ed.2d 846 (1966).

Accordingly, defendant's cross-motion for summary judgment is denied and plaintiff's motion for summary judgment is granted. Judgment is entered for the plaintiff, and the case is remanded to the Trial Division for proceedings to determine the amount of recovery under Rule 131(c).

## APPENDIX

Pertinent Armed Services Procurement Regulations:

Part 9—Responsible Prospective Contractors

**1–900 Scope of Part.** This Part sets forth (i) general policy with respect to responsibility of prospective contractors, (ii) minimum standards for responsible prospective contractors, (iii) requirements and procedures for determination of responsibility, and (iv) policy with regard to determination of subcontractor responsibility.

\* \* \* \* \* \*

**1–902 General Policy.** Purchases shall be made from, and contracts shall be awarded to, responsible prospective contractors only. A responsible prospective contractor is one which meets the standards set forth in 1–903.1 and 1–903.2, and such special standards as may be prescribed in accordance with 1–903.3 and by overseas commanders. The award of a contract to a supplier based on lowest evaluated price alone can be false economy if there is subsequent default, late deliveries, or other un-

satisfactory performance resulting in additional procurement or administrative costs. While it is important that Government purchases be made at the lowest price, this does not require an award to a supplier solely because he submits the lowest bid or offer. A prospective contractor must demonstrate affirmatively his responsibility, including, when necessary, that of his proposed subcontractors. The contracting officer shall make a determination of nonresponsibility if, after compliance with 1–905 and 1–906, the information thus obtained does not indicate clearly that the prospective contractor is responsible. Recent unsatisfactory performance, in either quality or timeliness of delivery, whether or not default proceedings were instituted, is an example of a problem which the contracting officer must consider and resolve as to its impact on the current procurement prior to making an affirmative determination of responsibility. Doubt as to productive capacity or financial strength which cannot be resolved affirmatively shall require a determination of nonresponsibility.

**1–903 Minimum Standards for Responsible Prospective Contractors.**

**1–903.1** *General Standards.* Except as otherwise provided in this paragraph 1–903, a prospective contractor must:

(i) have adequate financial resources, or the ability to obtain such resources as required during performance of the contract (see Defense Contract Financing Regulations, Part 2, Appendix E, and any amendments thereto; see also 1–904.2 and 1–905.2; for SBA certificates of competency, see 1–705.4);

(ii) be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing business commitments, commercial as well as governmental (for SBA certificates of competency, see 1–705.4);

(iii) have a satisfactory record of performance (contractors who are seriously deficient in current contract performance, when the number of con-

tracts and the extent of deficiency of each are considered, shall, in the absence of evidence to the contrary or circumstances properly beyond the control of the contractor, be presumed to be unable to meet this requirement). Past unsatisfactory performance, due to failure to apply necessary tenacity or perseverance to do an acceptable job, shall be sufficient to justify a finding of nonresponsibility. (In the case of small business concerns, see 1–705.4(c)(vi) and 1–905.2.);

(iv) have a satisfactory record of integrity (In the case of a small business concern, see 1–705.4(c)(vi).); and

(v) be otherwise qualified and eligible to receive an award under applicable laws and regulations, e. g., Section XII, Parts 6 and 8 (In the case of a small business concern, see 1–705.-4(c)(v).).

\* \* \* \* \* \*

**1–904 Determinations of Responsibility and Nonresponsibility.**

**1–904.1** *Requirement.* No purchase shall be made from, and no contract shall be awarded to, any person or firm unless the contracting officer first makes an affirmative determination that the prospective contractor is responsible within the meaning of 1–902. The signing of the contract by the contracting officer constitutes such a determination; therefore, he must assure himself that the applicable requirements of 1–903 are met before signing the contract or order. When a certificate of competency has been issued, the factors covered by the certificate of competency may be accepted by the contracting officer without further inquiry. When a bid or offer on which an award would otherwise be made is rejected because the prospective contractor is found to be nonresponsible, a determination of nonresponsibility shall be made, signed, and placed in the file. The determination of nonresponsibility shall set forth the basis of the determination. In making a determination of responsibility or nonresponsibility for purchase or contract awards of $100,000

and over, performance data should be acquired and considered when the contracting officer deems it necessary. Supporting documents or reports, including any pre-award survey reports (see 1–905.4) and SBA certificate of competency (see 1–705.4), shall be included in the contract file.

**1–904.2** *Affiliated Concerns.*

(a) Affiliated concerns (see 2–201(a)B(ii) and (b)(xvii) shall be considered as separate entities in determining whether the one of them which is to perform the contract meets the applicable standards for a responsible prospective contractor (but see 1–701.1 with respect to status as a small business concern).

(b) Notwithstanding the above, the record of performance and integrity of affiliated concern which may adversely affect the responsibility of the prospective contractor shall be considered by the contracting officer when making a determination of responsibility.

\* \* \* \* \* \*

**1–905 Procedures for Determining Responsibility of Prospective Contractors.**

**1–905.1** *General.*

(a) Before making a determination of responsibility (see 1–904), the contracting officer shall have in his possession or obtain information sufficient to satisfy himself that a prospective contractor currently meets the minimum standards set forth in 1–903, to the extent that such standards are applicable to a specific procurement.

(b) Maximum practicable use shall be made of currently valid information on file or within the knowledge of personnel in the Department of Defense. Each Department, shall at such level and manner as it deems appropriate, maintain useful records and experience data for the guidance of contracting officers in the placement of new procurement, and shall inform its contracting officers and the other Departments of the means of access thereto. Notwithstanding this direction contract administration offices shall maintain files of information reflecting upon the ability of contrac-

tors to perform Government contracts successfully.

(c) Any purchasing office becoming aware of circumstances which, for any reason, casts doubt upon the ability of a contractor to perform contracts successfully, shall immediately advise the cognizant contract administration office. A contract administration office, upon being notified by a purchasing office of unfavorable information affecting a contractor under its cognizance, or upon developing unfavorable information during the course of contract administration activities, shall advise the purchasing offices of the other Departments. When a contract administration office is requested to perform a pre-award survey and it has been notified of the existence of unfavorable information relative to the contractor, it shall obtain the details including full supporting information. Careful and full consideration shall be given such information. If a contract administration office becomes aware of a prospective contract award to a contractor about whom unfavorable information exists and no pre-award survey has been requested, it shall (i) immediately notify the purchasing office concerned, and (ii) secure the details of such unfavorable information as if it were performing a pre-award survey and advise the purchasing office concerned. The purchasing office shall give full consideration to such advice in determining whether an award should be made.

(d) Generally, information necessary to make determinations of responsibility shall be obtained only concerning prospective contractors within range for an award.

\* \* \* \* \* \*

**1–905.3** *Sources of Information.* Information regarding the responsibility of prospective contractors shall be sought among the following sources:

(i) The Joint Consolidated List of Debarred, Ineligible, and Suspended Contractors (see 1–601).

(ii) *From the prospective contractor* —including representation and other information contained in or attached to bids and proposals; replies to questionnaires; financial data, such as balance sheets, profit and loss statements, cash forecasts, financial history of the contractor and affiliated concerns; current and past production records; personnel records; and lists of tools, equipment, and facilities; written statements or commitments concerning financial assistance and subcontracting arrangements; and analyses of operational control procedures. Where it is considered necessary by the contracting officer to prevent practices prejudicial to fair and open competition or for other reasons, prospective contractors may be required to submit affidavits concerning their ability to meet any of the minimum standards set forth in 1–903, and company ownership and control (see 2–201(a)B(ii) and (b)(xvii)).

(iii) *Existing information within the Department of Defense* —including records on file and knowledge of personnel within the purchasing office making the procurement, other purchasing offices, related activities, contract administration offices, audit activities, and offices concerned with contract financing.

(iv) *Publications* —including credit ratings, trade and financial journals, business directories and registers.

(v) *Other sources* —including suppliers, subcontractors and customers of the prospective contractor; banks and financial companies; commercial credit agencies; Government departments and agencies; purchasing and trade associations; better business bureaus and chambers of commerce.

\* \* \* \* \* \*

Part 6—Debarment, Ineligibility and Suspension

**1–604.1** *Causes for Debarment.* The following are causes for debarment:

(i) conviction by or a judgment obtained in a court of competent jurisdiction for—

 (A) commission of fraud or a criminal offense as an incident to obtaining, attempting to obtain, or in the performance of a public contract;

 (B) violation of the Federal antitrust statutes arising out of submission of bids or proposals; or

 (C) commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, receiving stolen property, or any other offense indicating a lack of business integrity or business honesty which seriously and directly affects the question of present responsibility as a Government contractor.

If the conviction or judgment is reversed on appeal, the debarment shall be removed upon receipt of notification thereof. The foregoing does not necessarily require that a firm or individual be debarred. The decision to debar is discretionary; the seriousness of the offense and all mitigating factors should be considered in making the decision to debar.

(ii) clear and convincing evidence of violation of contract provisions, as set forth below, when the violation is of a character so serious as to justify debarment action—

 (A) willful failure to perform in accordance with the specifications or delivery requirements in a contract (including violation of the Buy American Act with respect to other than construction contracts);

 (B) a history of failure to perform, or of unsatisfactory performance, in accordance with the terms of one or more contracts; *provided*, that such failure or unsatisfactory performance is within a reasonable period of time preceding the determination to debar. (Failure to perform or unsatisfactory performance caused by acts beyond the control of the contractor shall not be considered as a basis for debarment.);

 (C) violation of the contractual provision against contingent fees; or

 (D) violation of the Gratuities clause, as determined by the Secretary in accordance with the provisions of the clause.

(iii) for other cause of such serious and compelling nature, affecting responsibility as a Government contractor, as may be determined by the Secretary of the Department concerned to justify debarment; or

(iv) debarment for any of the above causes by some other executive agency of the Government. (Such debarment may be based entirely upon the record of facts obtained by the original debarring agency, or upon a combination of additional facts with the record of facts obtained by the original debarring agency.)

**1-604.2** *Period and Scope of Debarment.*

(a) *Period of Debarment.* All debarments shall be for a reasonable specified period of time, commensurate with the seriousness of the cause therefor. \* \* \*

(b) *Scope of Debarment.*

(1) Debarment may include all known affiliates of a concern or individual. Business concerns are considered affiliates of each other when either directly or indirectly one concern or individual controls or has the power to control another, or a third controls or has the power to control both.

(2) A decision to include known affiliates in a proposed debarment is an individual determination which must be made on a case by case basis.

(3) The fraud or criminal conduct of an individual may be imputed to the business firm with which he is connected when the impropriety involved was performed in the course of official duty or with the knowledge or approval of the business firm.