INTER–CON SECURITIES SYSTEMS,
INC., Plaintiff,

v.

Verne ORR, Secretary, Department of
Defense, et al., Defendants.

Civ. No. 82–3668.

United States District Court,
District of Columbia.

March 29, 1983.

Timothy Sullivan, Washington, D.C., for plaintiff.

Mark Gallant, Sp. Asst. U.S. Atty., for defendant.

Jack W. Fleming, Washington, D.C., for defendant-intervenor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. PRATT, District Judge.

### Introduction

This is an action by a disappointed government contract bidder, Inter-Con Securities Systems, Inc. (Inter-Con), seeking to enjoin performance of a contract for security patrol services at Los Angeles Air Force Station, California (LAAFS), that was awarded by the Air Force to the defendant intervenor, Delta Associates, Ltd. (Delta), on December 3, 1982. The performance starting date under the contract was January 1, 1983. Inter-Con filed its complaint, accompanied by motions for a temporary restraining order and for a preliminary injunction, on December 28, 1982, asking that we declare the contract award unlawful, enjoin its performance, and award the contract to Inter-Con. Judge Thomas F. Hogan heard and denied plaintiff's request for a temporary restraining order the same day, thus permitting performance to begin under the contract as scheduled. Thereafter, the government filed a motion to dismiss the action on the grounds that section 133(a) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 40 (1982), divests federal district courts of jurisdiction to consider post-award claims by disappointed bidders for declaratory or injunctive relief. The government and the plaintiff also filed motions for summary judgment. Delta has joined in the government's motions to dismiss and for summary judgment. All outstanding motions were heard by this Court on February 17, 1983. For the reasons set forth hereinafter, the Court denies the government's motion to dismiss, denies plaintiff's motions for a preliminary injunction and for summary judgment, and grants the government's motion for summary judgment.

1. The DARs are codified at 32 C.F.R. (1982).

2. Three of the seven bids were eliminated because they were "nonresponsive" to the solicitation. The bids of Washington Patrol Services, the incumbent security patrol contractor, and Modern Services, Inc. were found nonrespon-

## FINDINGS OF FACT

1. The material facts are not in dispute. On July 22, 1982 the Department of the Air Force issued a solicitation for bids, restricted to small businesses, *see* 15 U.S.C. § 637(d) (1976); Defense Acquisition Regulations (DARs) 1–706,[1] for the operation and management of sensitive base security patrol services at LAAFS. The solicitation was for a one-year contract with four one-year options, with a contemplated beginning performance date of October 1, 1982. Bids were opened on August 20, 1982. Seven firms submitted bids,[2] as follows:

| FIRM | AMOUNT OF BID |
|---|---|
| 1. Security Associates, Inc. (SAI) | $ 12,800,134.77 |
| 2. Modern Services, Inc. | 13,537,585.18 |
| 3. Delta Associates, Ltd. | 13,544,419.78 |
| 4. APO II Protection, Inc. | 13,538,131.15 |
| 5. Washington Patrol Services | 14,076,531.81 |
| 6. Inter-Con Security Systems, Inc. | 14,763,075.00 |
| 7. Young Patrol Services | 14,844,000.00 |

2. Among other things, the solicitation specified that the bidders would be required to obtain a top secret facilities clearance, Solicitation, ¶ H.11, and to procure and maintain all necessary federal, state or local permits and licenses prior to the award of the contract. *Id.*, ¶¶ H.14, L.44, L.47. With respect to the latter requirement, the solicitation further stated that "[y]ou must have the State of California licenses in your possession at the time of the pre-award survey or have written confirmation from the California licensing agency stating that the license will be granted no later than 30 September, 1982." *Id.*, ¶ M.5(6).

3. The low responsive bidder, SAI, was notified before the contract was awarded that it was not a "responsible" bidder because it lacked financial capability and the requisite top secret security clearance. Eichhorn Affidavit, ¶ 4. The nonresponsibility determination was referred to the

sive because they did not qualify as small businesses. APO II Protection, Inc.'s bid was nonresponsive because it failed to acknowledge two of four amendments to the solicitation. Affidavit of Earl Eichhorn, ¶ 3.

Small Business Administration (SBA), and SAI, on September 13, 1982, filed a protest with the General Accounting Office that it had not been allotted sufficient time between the bid opening and the award date to obtain the requisite clearance. *Id.* The next low bidder, Delta Associates, was similarly found nonresponsible for lack of a security clearance, and protested to GAO on September 22, 1982 that the time allowed to obtain the security clearance was inadequate. *Id.,* ¶ 5. The incumbent, Washington Patrol Services, Inc., protested that plaintiff Inter-Con was not a "small business," prompting the contracting officer to refer Inter-Con's small business status to the SBA for a determination. *Id.,* ¶ 6; Affidavit of Vernon J. Edwards, ¶¶ 3, 8.

4. Because of the pending protests, and in consideration of the relevant DARs and GAO precedent, the contracting officer decided to postpone the award date. Edwards Affidavit, ¶ 3. The contracting officer negotiated a three month extension of the existing contract with the incumbent contractor Washington Patrol Services, and extended the award date to November 30, 1983. *Id.,* ¶ 3. In view of the extension SAI and Delta Associates withdrew their protests. Written confirmation of the extension was sent to all eligible bidders on October 6, 1982. *Id.,* ¶ 4.

5. SBA declined to certify SAI's responsibility on September 27, 1982, and SAI thereafter acquiesced in the Air Force's previous determination of its nonresponsibility after failing to obtain the security clearance. Eichhorn Affidavit, ¶¶ 4, 7. The Air Force learned on October 12, 1983, that the SBA had found Inter-Con to be a small business as of October 8, 1982. Edwards Affidavit, ¶ 8. Delta Associates was granted a security clearance by the Defense Investigative Service on October 8, 1982 and, as the lowest remaining responsive bidder, was awarded the contract on December 3, 1982, with performance to begin on January 1, 1983. Inter-Con protested the award to the GAO on December 11, 1982 contending that the joint venture was not properly licensed by the State of California to perform security services. Affidavit of David Ciummo, ¶ 3.

6. Delta had clearly stated in its bid, at paragraph K.19, that it was submitting the bid on behalf of a joint venture in which it was joined by Windsor Security and Investigations, Inc. (which had been licensed by the State in February, 1982), and by Doral Building Services. Edwards Affidavit, ¶ 9; Eichhorn Affidavit, ¶ 8.[3] Delta, which served as the agent of the joint venture and proposed to control and oversee the administration and operation of security patrol services under the contract, further indicated that it had applied for a California security patrol license which it expected to receive by mid-September, 1982. Delta Bid Proposal, p. 10; Edwards Affidavit, ¶ 9.

7. On September 7, 1982, Delta passed its examination and the State informed it that it could obtain the license upon remitting the appropriate fee. In light of the extended contract award date, Delta remitted its fee at a later date, and obtained a State license effective November 5, 1982, nearly one month before the award.[4]

8. On the basis of these factors, the contracting officer who made the award was satisfied that the successful bidder had complied with the licensing requirements set forth in the solicitation and was accord-

---

3. Delta's bid proposal further delineated the roles of the respective members of the joint venture, and explained that Doral—which was not licensed to perform security services by the State—would be strictly limited to providing financial support and contract administrative services. Eichhorn Affidavit, ¶ 8; Delta Bid Proposal, Section Two. *See also* Affidavit of Quintin L. Villaneuva, Jr. Nowhere in the bid proposal was there any indication that Doral would exercise management or control, directly or indirectly, over security guard services.

4. After being awarded the contract, and in light of this lawsuit, the joint venture took the additional precaution of filing for a separate license in the name of the joint venture. A California license was issued in the name of the joint venture on January 7, 1983. We do not consider this factor to bear on the sufficiency of the joint venture's license status as of December 3, 1983, the date of the contract award.

ingly "responsible" to perform the contract as of the award date. Eichhorn Affidavit, ¶ 8. *See also* Edwards Affidavit, ¶ 9. Thereafter, Captain James O. Sutton, United States Air Force, contacted the California Department of Consumer Affairs, Bureau of Collection and Investigative Services, to inquire further into whether Delta's license was sufficient under state law. Sutton Affidavit. Captain Sutton was advised on several occasions that a separate license in the name of the joint venture was not required as long as a licensed entity actually performed the security services. *Id.*

9. On December 28, 1982, the State Bureau issued a letter to Mr. Villaneuva, Delta's President, indicating that the question of whether "an unlicensed joint venture may participate to provide [security] services through another licensed entity is one of first impression ... and is not easily resolved." The Bureau concluded, however, that "no violations of the State's licensing laws have yet occurred," and noted its "consistent position ... that whenever licensed activity is carried on, the licensed services must be provided only by those persons or entities duly licensed."

10. Thereafter, on January 12, 1983, the Bureau, through its Chief, James Cathcart, issued a final letter concluding:

> ... that DELTA ASSOCIATES LTD., a licensed operator, could in fact perform [the services required] under the federal contract, notwithstanding the fact that the contract itself may have been let to a joint venture. The critical issue was one of management and control over the licensee's activities. As long as those activities were controlled exclusively by the licensed corporation's officers, directors and qualified manager, the corporation was within its legal right to conduct the licensed activity.

Letter from James Cathcart to Quintin Villaneuva, Jr. (Jan. 12, 1983).

## CONCLUSIONS OF LAW

A. *Motion to Dismiss*

[1] 1. The government argues that, effective October 1, 1982, this Court was divested of jurisdiction to consider post-award contract actions seeking injunctive relief. The government bases this argument on Section 133(a) of the Federal Courts Improvement Act of 1982, which states:

> To afford complete relief on any contract claim brought before the contract is awarded, the [Claims] court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief.

2. Although this provision does speak of exclusive jurisdiction in the new Claims Court, its plain terms refer only to suits "brought *before* the contract is *awarded*." (emphasis supplied). Although the legislative history is somewhat ambiguous, we are satisfied that the exclusive jurisdiction of the Claims Court lies in the area of pre-award litigation, and that post-award cases such as this may continue to be heard by the district courts. In so holding, we align ourselves with Judge Flannery's recent decision in *American District Telegraph v. Department of Energy*, 555 F.Supp. 1244 (D.C.D.C.,1983).

B. *Preliminary Injunction*

■ 3. In asking us to grant a preliminary injunction, it is plaintiff's burden to satisfy the criteria set forth in *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921 (D.C.Cir.1958), and *Washington Metropolitan Area Transit Comm'n. v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977) that:

(a) There is a substantial likelihood that plaintiff will succeed on the merits;

(b) Plaintiff will sustain irreparable injury without the requested relief;

(c) The grant of the injunction will not unduly harm the interests of the defendants; and

(d) The public interest favors the granting of an injunction.

4. Moreover, in a defense procurement case such as this, it is appropriate for us to

exercise particular restraint. *See M. Steinthal & Co., Inc. v. Seamans*, 455 F.2d 1289 (D.C.Cir.1971); *Wheelabrator Corp. v. Chafee*, 455 F.2d 1306 (D.C.Cir.1971). We find that plaintiff has failed to make an adequate showing under each of the four controlling criteria.

. 5. *Likelihood of success:* Plaintiff advances two claims on the merits. The first claim is that the contracting officer acted improperly in extending the original award date of October 1, 1982, and affording Delta additional time within which to establish its responsibility to perform under the criteria of the solicitation. Specifically, plaintiff argues that the award was invalid because Delta failed to obtain a California security patrol license prior to October 1, 1982. On the contrary, we find that the contracting officer acted reasonably and responsibly in extending the award date under the circumstances, and that Delta was not required to be licensed by October 1, 1982.

6. As a general principle, the Court of Appeals for the District of Columbia has held that the reviewing court may not overturn a procurement decision unless (1) a procurement official's decision on matters committed primarily to his discretion had no rational basis, or (2) the procurement involved a clear and prejudicial violation of applicable statutes or regulations. *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973). Furthermore, particular deference is due a contracting officer's determinations involving the "responsibility" of a bidder to perform under the contract. *See Trilon Educational Corp. v. United States*, 578 F.2d 1356, 1358, 217 Ct.Cl. 266 (1978); *Robert E. Derecktor of Rhode Island, Inc. v. Goldschmidt*, 516 F.Supp. 1085, 1096 (D.R.I. 1981).

■ 7. Here, the contracting officer attested that he extended the award date because protests had been filed with the GAO concerning the amount of time allotted bidders to obtain security clearances. There is little basis to doubt that the contracting officer had authority to extend the award date: such authority is reflected in the provisions of the solicitation, *see, e.g.,* p. 10, ¶ 10; ¶ H.24; Edwards Affidavit, ¶ 7, and in the regulations. *See* DAR 2–407.1.

8. We are persuaded that the exercise of that authority was reasonable. First, the DARs encourage the suspension of an award until resolution of protests, DAR 2–407.8(b). Second, the GAO—whose decisions in the contract procurement area are afforded great weight by the courts—has ruled in comparable circumstances that considerations of fairness and competition favor extensions that are designed to give eligible bidders a reasonable opportunity to apply for security clearances. *Career Consultants, Inc.* B–200506.2, May 27, 1981, 81–1 CPD ¶ 414. *See also What-Mac Contractors, Inc.* B–192188, September 6, 1979, 79–2 CPD ¶ 179.

■ 9. We agree with defendants that the extension of the award date served to extend the time for meeting all "responsibility" criteria under the solicitation, including the licensing requirement. *See Guardian Security Agency, Inc.* B–207309, May 17, 1982, 82–1 CPD ¶ 471. The plain terms of the solicitation (¶ L.44) make it clear that the critical time for obtaining a license and satisfying all other "responsibility" criteria is "prior to the award." The DARs have the same effect. *See* DAR 1–904.1 (proof of responsibility generally); DAR 7–2003.-77 (licensing and permit requirements).

10. Although the solicitation specified, as plaintiffs point out, that bidders were to obtain California licenses by "no later than September 30, 1982," Amendment 0001, L.48.a(7), a contextual analysis of that paragraph, in *pari materia* with the relevant regulations and the related paragraphs of the solicitation, makes it clear that the September 30th deadline was geared entirely to the originally anticipated October 1, 1982 award date and had no significance independent of the award date. When the award date was extended, that requirement became moot.

11. Finally, it is worth noting that questions raised about plaintiff's status as a

"small business" eligible for an award of the contract were not resolved by the SBA until October, 1982. If plaintiff's argument that all requirements under the solicitation had to be met by September 30, 1982 were accepted, then plaintiff itself would have been precluded from receiving the award.

■ 12. Plaintiff's second contention on the merits is that California law required the joint venture to obtain a security patrol operator's license in its own name, and that the successful bidder was accordingly not responsible by the December 3, 1982 award date because only Delta Associates and Windsor possessed licenses. Under the *Kentron Hawaii* case, *supra*, we do not decide de novo whether California requires that a joint venture have a separate license, but, rather, we must decide whether the contracting officer rationally concluded that a separate license was not required. We cannot substitute our judgment for that of the procurement official, even if we might have reached a different conclusion independently. *Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d 953 (D.C.Cir.1980).

13. We are unable to conclude that the contracting officer's determination was unreasonable. In support of its argument, plaintiff has cited only a provision of California law indicating that a state license may not be "assigned." California Business and Professional Code Section 7535. But that provision does not address whether a joint venture is required to obtain a separate license in its own name where it represents that licensed activity will be performed under the direction and control of a duly licensed constituent of the joint venture, namely, Delta Associates Ltd.

■ 14. No statute, rule or regulation proscribes such performance, and no case cited by the plaintiff indicates that the award to a joint venture in these circumstances was inappropriate. On the contrary, *What-Mac, supra*, on which plaintiff relies, holds that a contracting officer enjoys broad discretion to determine whether a particular bidder has demonstrated re-

sponsibility under state licensing requirements at the time of award.

15. In this case, the reasonableness of the contracting officer's conclusion that the joint venture's license status would not result in state interference with the contract was confirmed by subsequent events. As noted, *supra*, oral inquiries by the Air Force in December indicated that the Bureau did not consider the joint venture to be in violation of state laws. Similarly, the state in its December 28, 1982 letter to Mr. Villanueva, indicated that at that time, it did not intend to take action. It further stated that the questions raised by this matter were, at the very least, novel and not cut and dried. This assessment by the Bureau demonstrates that the contracting officer's conclusions were not clearly wrong or without rational basis. In any event, the State Bureau confirmed in a final letter of January 12, 1983 that the joint venture was not required separately to obtain a license by California law so long as Delta, a duly licensed constituent of the venture, maintained control over the security force.

16. In sum, plaintiff's claim that the award to the joint venture contravened state law has been rejected by the state itself. Plaintiff accordingly cannot succeed on the merits.

■ 17. *Irreparable injury to plaintiff:* In our view plaintiff has not met its burden of showing that it would suffer irreparable injury in the absence of injunctive relief. Plaintiff's alleged injury rests on its assumption that it would be entitled to an award of the contested contract if we found the award to Delta invalid. It is not within the Court's province to order the award of the contract to a specific party, *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 864 (D.C.Cir.1970), and the underlying facts refute that plaintiff would have any "right" to have the Air Force award the contract to it even if we declared the original award invalid.

18. *Injury to the other parties and the public interest:* A preliminary injunction

would cause substantial harm to other parties. The successful bidder, Delta Associates, has at all times proceeded with candor and "clean hands." Invalidation of the award to Delta, based on what would at most be a thin technicality advanced by plaintiff, would unduly prejudice the joint venture and cause it substantial financial harm and inconvenience.

19. The government, which operates with public funds, would be required to pay Delta Associates over $120,000.00 in start-up costs and expenses if it were required to terminate the contract awarded on December 3, 1982. *See* DAR 7–103.21(b). The government might also be subjected to substantial additional costs if it were required to resolicit the five year contract for security services at LAAFS.

20. Plaintiff contends that invalidation of the contract is necessary to ensure the integrity of the contracting process. As we explained above, however, the contracting officer did not act irrationally or unreasonably. On the other hand, there is a recognized public interest against undue judicial intervention in the award process, and this particular contract is for a security patrol system at an important and sensitive military installation. We are satisfied by the unrefuted declaration of Major General Forrest S. McCartney, Vice Commander, Space Division, LAAFS, that the confusion and interruption of sensitive guard services that might be caused by removing Delta Associates from its job could also pose a national security risk.

C. *The Government's Motion for Summary Judgment*

21. We have found and concluded that plaintiff's request for a preliminary injunction must be denied. As indicated in the preceding discussion, there remains no genuinely disputed question of material fact and our review of the contracting officer's responsibility determinations turns on questions of law. Since we have concluded that those determinations were reasonable ones for which the court may not substitute its own judgment, we grant the government's motion for summary judgment and the case stands dismissed.

An order consistent with the foregoing has been entered this day.