**HAYES INTERNATIONAL CORP.**

v.

**The UNITED STATES**

**and**

**Whitehall Corp., Defendant/Intervenor.**

**No. 151–85C.**

United States Claims Court.

April 4, 1985.

Harvey G. Sherzer, Washington, D.C., for plaintiff; Michael A. Hordell, of counsel.

Michael Gordon, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard

K. Willard, Washington, D.C., for defendant.

Roger N. Boyd, Washington, D.C., for defendant/intervenor.

## OPINION

SETO, Judge.

In this pre-award bid protest case filed pursuant to 28 U.S.C. § 1491(a)(3), plaintiff Hayes International Corp. ("Hayes"), seeks preliminary and permanent injunctive and declaratory relief to prohibit the Department of the Navy from awarding a contract under RFP No. N68520–85–R–9082 to anyone other than Hayes. The underlying issues are (1) whether this court has jurisdiction to review the Navy's actions in considering plaintiff's bid, and (2) whether the Navy's action in withdrawing Whitehall Corporation's ("Whitehall") nonresponsibility determination and requesting another round of best and final offers was in violation of law or regulation, or without a rational basis. For the reasons stated below, defendant's and defendant/intervenor's motions for summary judgment [1] are granted.

## FACTS

This action arises from a solicitation by the Naval Aviation Logistics Center for aircraft maintenance and material services on the P-3A/B series aircraft. Although the original closing date for the solicitation was June 15, 1984, it was extended through three successive Amendments to August 27, 1984. Following the submission of proposals, the Navy determined that only Hayes and Whitehall were within the competitive range and requested them to submit best and final offers by November 29, 1984. The Navy Source Selection Board recommended award of the contract to Whitehall subject to a successful pre-award survey of its principal place of performance at Greenville, Mississippi.

A pre-award survey of Whitehall's facilities on December 12–13, 1984, disclosed that Whitehall was nonresponsible in that it lacked the capability to satisfactorily perform the contract at the Greenville site. In particular, Whitehall was found to lack technical capability, production capability, quality assurance capability, government property control and plant safety. Because Whitehall is a small business, the Navy referred the question of Whitehall's responsibility to the Small Business Administration ("SBA") on January 21, 1985. Whitehall thereafter applied to the SBA for a certificate of competency ("COC").

Although Whitehall's November proposal listed Greenville as its principal place of performance, it also proposed extensive use of the personnel, equipment and facilities of its subsidiary's (Aero Corporation) Lake City, Florida facility. Affidavit of Lee D. Webster at 2. Additionally, between the time Whitehall submitted its original best and final offer in November 1984 and the time the SBA initiated its responsibility review in late January 1985, the owner of the Greenville facility awarded an option for a lease on the site to another concern. On February 11, 1985, the SBA informed the Navy that it planned to issue Whitehall a COC based on its determination that Whitehall could responsibly perform the contract at the proposed support facility in Lake City, Florida.

Following the SBA's COC determination, the Navy recognized that award of the contract to Whitehall at the Lake City location could cause uncertainties in terms of contract price and technical qualifications. Faced with these changed circumstances, the contracting officer withdrew the Navy's nonresponsibility determination on February 15, 1985 and requested best and final offers from both Hayes and Whitehall. On February 21, 1985, the Navy amended the solicitation. This amendment reduced the number of aircraft to be serviced during the first year of the contract and established a February 25, 1985, deadline for receipt of best and final offers. Following an extension of time, Hayes and

---

**1.** Although styled as motions to dismiss *and* for summary judgment, defendant's and defendant/intervenor's motions will be treated as motions for summary judgment.

Whitehall submitted their best and final offers on March 4, 1985. In its offer, Whitehall proposed to perform the contract using the Lake City, Florida facility as its principal place of performance.

On March 4, 1985, Hayes protested any potential award of the contract to Whitehall, and on March 8, Hayes filed a bid protest with the General Accounting Office. Both protests were dismissed the following week. Hayes filed its complaint for declaratory and injunctive relief in this court on March 18. Whitehall was permitted to join in the action on March 25 as a defendant/intervenor pursuant to RUSCC 24(a). The case is presently before the court on cross-motions for summary judgment, oral argument having been heard on April 1, 1985.

## DISCUSSION

### I. *Jurisdiction*

█ Plaintiff asks this court to determine whether the Navy's action in withdrawing its nonresponsibility determination and requesting another round of best and final offers was in violation of applicable laws or regulations, or without a rational basis. In challenging this court's jurisdiction, defendants argue that plaintiff may not seek injunctive relief on the basis of alleged wrongful action taken by anyone other than the contracting agency. In particular, they allege that plaintiff is actually seeking review of the propriety of the SBA's proposed issuance of a COC for Whitehall. Defendants' characterization of plaintiff's complaint, however, is overly broad and therefore will not prevent this court from determining the merits of plaintiff's action.

This court's jurisdiction under 28 U.S.C. § 1491(a)(3) is founded upon an implied-in-fact contract between Hayes and the United States obligating the government to consider Hayes' offer fairly and honestly. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1367–68 (Fed.Cir.1983); *accord, CACI, Inc.—Federal v. United States*, 719 F.2d 1567, 1573 (Fed.Cir.1983). As the Claims Court has previously noted, it is the contracting agency which has the primary responsibility under this implied-in-fact contract. *See Southwest Marine, Inc. v. United States*, 4 Cl.Ct. 275, 279 (1984). Accordingly, to the extent plaintiff challenges actions of the Navy in considering its offer, we shall exercise our jurisdiction to review those actions. In making our review, we will consider the circumstances leading to the Navy's decision to withdraw the nonresponsibility determination and issue a request for best and final offers. To the extent SBA's finding that Whitehall is a responsible bidder and entitled to a COC influenced that decision, it too will be considered. However, we will not attempt to determine the propriety of SBA's actions [2], nor make those actions the basis for an award of injunctive relief. *See Speco Corp. v. United States*, 2 Cl.Ct. 335 (1983).

### II. *Standard of Review*

█ This court has examined its role in the procurement process on numerous occasions and has consistently found it to be severely limited:

> Judicial review of an agency's pre-award procurement decision is, and should be, extremely limited in scope. The court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable.... Judicial intrusions into the procurement process are generally limited, circumspect and infrequent. [*Baird Corp. v.*

---

2. Hayes claims that determining the propriety of SBA's actions is a necessary incident to its claim that the Navy reacted in an arbitrary and capricious manner, Plaintiff's Cross-Motion for Summary Judgment at 9 n. 4, and cites *Related Industries v. United States*, 2 Cl.Ct. 517 (1983) and *Standard Mfg. Co. v. United States*, 7 Cl.Ct. 54 (1984) for the proposition that this court may review matters pertaining to SBA COC determinations. Because these cases are distinguishable on their facts, their holdings will not be expanded to encompass the situation presented in the instant action.

*United States,* 1 Cl.Ct. 662, 664 (1983) (citations omitted).]

Therefore, to successfully challenge a government procurement decision, a bidder must demonstrate by clear and convincing evidence that the government's action was arbitrary and capricious. *Keco Industries, Inc. v. United States,* 203 Ct.Cl. 566, 574, 492 F.2d 1200, 1203 (1974). In essence, the plaintiff must show that there is no reasonable basis for the adverse administrative decision, or that the procurement procedure involves a clear and prejudicial violation of applicable statutes or regulations. *Id. See also Big Bud Tractors, Inc. v. United States,* 2 Cl.Ct. 188, 193 (1983); *Baird Corp.,* 1 Cl.Ct. at 664.

■ Moreover, the degree of proof necessary to overturn procurement determinations is related to the amount of discretion vested in the administrative official whose actions are challenged. *Keco,* 203 Ct.Cl. at 574, 492 F.2d 1200, *accord Baird,* 1 Cl.Ct. at 664 n. 2. The instant action involves a negotiated procurement wherein plaintiff challenges the Navy's responsibility determination and its decision to request new best and final offers. In negotiated procurements, contracting officials have been accorded broad discretion in the process of obtaining the contract most beneficial to the government. 48 C.F.R. § 15.610 (1984); *see also Sperry Flight Systems Division v. United States,* 212 Ct.Cl. 329, 339–340, 548 F.2d 915 (1977). Therefore, our review of any aspect of a negotiated procurement is, as a general proposition, limited in scope. Because of the nature of the challenged actions and the amount of discretion vested in the contracting official, plaintiff carries an extremely heavy burden of proof in attempting to overturn those actions.

## III. *Merits of the Action*

Plaintiff argues that, faced with an illegal SBA decision to award a COC to Whitehall, the Navy should have sought to resolve its differences with SBA, appealing the COC determination to the SBA Central Office if necessary. Plaintiff contends that the Navy's acceptance of SBA's responsibility determination and its attempts to avoid that determination by withdrawing its notice of nonresponsibility and seeking another round of best and final offers from Hayes and Whitehall prejudiced Hayes by granting Whitehall an undeserved competitive advantage. Plaintiff urges that these actions constitute an arbitrary and capricious abuse of discretion by the Navy thereby warranting injunctive relief by this court. We do not agree. Given our limited scope of review and recognizing the heavy burden under which plaintiff labors, we find that there is insufficient evidence to warrant intrusion by this court into the procurement process. In particular, we find that the Navy's actions are in accord with all applicable regulations and statutes, and exhibit a rational basis.

### A. *Responsibility Determination*

■ It is well-established that the contracting official has a considerable degree of discretion in arriving at a responsibility determination. *See Keco,* 203 Ct.Cl. at 576, 492 F.2d 1200; *Trilon Educational Corp. v. United States,* 217 Ct.Cl. 266, 578 F.2d 1356 (1978). Because the criteria for determining bidder responsibility are not readily susceptible to reasoned judicial review and essentially involve a matter of business judgment, *see Trilon,* 217 Ct.Cl. at 270–271, 578 F.2d 1356, affirmative determinations of responsibility generally will not be overturned absent allegations of fraud or bad faith. *Id.; accord Keco,* 203 Ct.Cl. at 576, 492 F.2d 1200. There have been no such allegations in the instant action.

■ We find the Navy's withdrawal of Whitehall's nonresponsibility determination to be entirely proper. There are no statutory or regulatory provisions which preclude the contracting agency from taking such action. Rather, under the circumstances of the instant action, the Navy acted rationally in proceeding as it did. Indeed, even if SBA had not been involved, the Navy would have been justified in withdrawing its nonresponsibility determination due to the sudden unavailability of Whitehall's principal place of performance. Be-

cause Whitehall's November 1984 proposal listed the Lake City, Florida location as a major source of assistance in terms of facilities, equipment and personnel, it was entirely proper for the Navy to reassess Whitehall's responsibility at this alternate facility.

The prevailing concern in a negotiated procurement is to attain that contract most advantageous to the government. If withdrawal of a notice of nonresponsibility furthers that end by allowing the contracting agency to evaluate new information, then it is proper. The Comptroller General has noted that reevaluating responsibility in light of changed circumstances is appropriate since "a responsibility determination should be based on the most current information available to the contracting officer." *Beacon Winch Co.*, B–204787.2, August 15, 1983, 83–2 CPD ¶ 205 at 3–4 (citations omitted). In light of the changed circumstances and the fact that the Navy was facing a binding COC determination by SBA, the Navy followed the most prudent course available to it. Were it to allow the SBA to issue a COC based on the Lake City site and then appeal that decision, the Navy would have taken the chance of being forced to award a contract on the basis of incomplete information.[3] Therefore, given the sudden change in Whitehall's position and the uncertainty that losing a COC appeal would have caused, the Navy acted rationally and in the best interests of the government in withdrawing the notice of Whitehall's nonresponsibility.

B. *Request for Best and Final Offers*

■ On the same day it withdrew the notice of Whitehall's nonresponsibility, the Navy requested new best and final offers from both Hayes and Whitehall. It is well-established that contracting officials are accorded broad discretion in conducting a negotiated procurement, *see Sperry Flight*, 212 Ct.Cl. at 339–340, 548 F.2d 915, including the decision to request additional best and final offers. As with withdrawal of a nonresponsibility determination, no statute or regulation precludes the Navy from reopening discussions with the bidder. Indeed, 48 C.F.R. § 15.611(c) provides that the contracting officer may request additional best and final offers when it is in the government's best interest to do so:

> (c) After receipt of best and final offers, the contracting officer should not reopen discussions unless it is clearly in the Government's interest to do so (e.g., it is clear that information available at that time is inadequate to reasonably justify contractor selection and award based on the best and final offers received). If discussions are reopened, the contracting officer shall issue an additional request for best and final offers to offerors still within the competitive range.

Before SBA began its review of the Navy's nonresponsibility determination, Whitehall's principal place of performance became unavailable. Thus, even without an impending COC determination by SBA, the Navy could not discern, on the basis of the information before it, whether Whitehall could perform responsibly at another location or whether award to Hayes would be most advantageous. In light of the changed circumstances, the Navy was within its authority in requesting additional information through best and final offers.

Moreover, Amendment 5 which issued on February 21, 1985, not only requested new and best final offers, but also reduced the estimated quantity of service required by 50%. 48 C.F.R. § 15.606(a) provides as follows:

> When, either before or after receipt of proposals, the Government changes, relaxes, increases or otherwise modifies its requirements, the contracting officer shall issue a written amendment to the solicitation.

The Comptroller General has ruled on several occasions that a change in the quantity of service/materials required under a solici-

---

**3.** In particular, the effect of a change in Whitehall's place of performance upon price and other factors was unknown. Affidavit of Captain

N.W. Melnick at 3. Also, a technical evaluation of the Lake City site had not yet been accomplished.

tation is sufficient justification, for a new round of best and final offers. *See, e.g., Cadillac Gage Company*, B–209102, July 15, 1983, 83–2 CPD ¶ 96; *Delta Systems Consultants, Inc.*, B–201166, June 23, 1981, 81–1 CPD ¶ 519. Given the nature of this procurement and the change in requirement reflected by Amendment 5, the Navy's decision to seek further best and final offers was a proper exercise of discretion.

■ Hayes complains that the Navy's actions prejudiced it and granted Whitehall an undeserved competitive advantage by allowing it to amend its proposal. We do not agree. When confronted with similar circumstances, the Comptroller General has consistently affirmed the contracting officer's exercise of discretion:

> We have upheld agency determinations to request a second round of best and final offers when a valid reason exists for the action. *Tymnet, Inc., GTE Telenet Communications Corporation*, B–209617, B–209617.2, April 12, 1983, 83–1 CPD 384. Both protestors allege that the contracting officer requested a second round of best and final offers ... to change the delivery requirements and permit the Army to accept Emerson's nonconforming proposal.
>
> ... The contracting officer determined that a second round of best and final offers was in the government's best interests and was necessary ... to ensure the fair and equal treatment of all offerors. We view this action as falling within the permissible grounds of discretion. [*Crown Point Coachworks and R & D Composite Structures; North American Racing Co.*, .B–208694, B–208694.2, September 29, 1983, 83–2 CPD ¶ 386 at 6–7.]

Rather than prejudicing plaintiff, the government's action in requesting new best and final offers from *both* Hayes and Whitehall was necessary to ensure the fair and equal treatment of both offerors. The primary purpose of engaging in a negotiated procurement is to attain that contract most advantageous to the government. To the extent that additional negotiations are necessary to achieve that end, they will be permitted as long as they are carried out fairly.

When negotiations are conducted, the fact that initial proposals may be rated as acceptable does not invalidate the necessity for discussions of their weaknesses, excesses or deficiencies in order that the contracting officer may obtain that contract most advantageous to the Government. We have stated that discussions of this nature should be conducted whenever it is essential to obtain information necessary to evaluate a proposal or to enable the offeror to upgrade the proposal. [50 Comp.Gen. 117, 123 (1970).]

In arguing that the Navy should not have reopened negotiations, plaintiff ignores the fact that the Navy expressly reserved the right to reject any or all offers. If this drastic action was available, then it follows that the Navy was justified in seeking additional information through best and final offers before awarding the contract. As the Court of Claims stated in *Keco*, 203 Ct.Cl. at 577, 492 F.2d 1200:

> [A]lthough the harm asserted is that the plaintiff would likely have received the award but for incorrect preference given his successful competitor's bid, there is no assurance that any bidder would have obtained the award since the Government retains, in its discretion, the right to reject all bids without any liability. [Citations omitted.]

*Accord Burroughs Corp. v. United States*, 223 Ct.Cl. 53, 66, 617 F.2d 590 (1980). Therefore, under the facts of the instant case, Hayes was not prejudiced by the contracting officer's proper exercise of discretion in requesting new best and final offers.

## CONCLUSION

Hayes has failed to establish that the Navy breached its duty to fairly and honestly consider Hayes' proposal. In a negotiated procurement, the contracting official is accorded broad discretion to obtain the

most advantageous contract for the government. Thus, the contracting officer may withdraw a nonresponsibility determination and request new best and final offers when the information previously submitted is inadequate to justify award of the contract. Faced with the unavailability of Whitehall's proposed place of performance, the change in quantity of service/materials required under the contract, and the impending COC determination by SBA, the Navy acted responsibly and fairly in withdrawing Whitehall's notice of nonresponsibility and requesting best and final offers. We find that plaintiff fails to carry its burden and therefore is not entitled to injunctive or declaratory relief.[4] Accordingly, it is hereby ORDERED that plaintiff's cross-motion for summary judgment is DENIED, defendant and defendant/intervenor's motions for summary judgment are GRANTED, and plaintiff's complaint is to be DISMISSED.

---

**4.** The requirements for attaining equitable relief are delineated in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). Plaintiff fails to meet these requirements.