The TENNESSEE SOAP COMPANY,
v.
The UNITED STATES.
No. 95-52.

United States Court of Claims.
Nov. 30, 1954.

Harold G. Hernly, Washington, D. C., for plaintiff. Wrape & Hernly, Washington, D. C., and Louis I. Dailey, Memphis, Tenn., were on the briefs.

Thomas H. McGrail, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

The plaintiff, a manufacturer of laundry soap, on June 1, 1950, contracted with the Navy Department for the delivery by plaintiff of 120,000 pounds, more or less, of laundry soap. The delivery was to be made between July 1 and September 30, 1950, at such times and in such quantities as might be determined and specified by the Navy Department. The price was to be $.0826 per pound.

The plaintiff was given a preliminary notice of award during the month of June 1950, although the official award was not received by it until August 7, 1950.

By the terms of the agreement under the head of "Estimated Quantities" it was stipulated that the quantities set forth are estimates only; that the contractor was required to furnish and the Government to accept such quantities as should from time to time be ordered; that in any event the Government was obligated only to order supplies having an aggregate value of not less than $10; that the contractor was required to furnish supplies up to the estimated quantities. It was also further provided that if the Government ordered and the contractor furnished more than the esti-

mated maximum amount, payment for the excess should be at the stipulated unit prices.

It was further provided that the soap should be delivered at such times and in such quantities as might be specified in each order and that unless otherwise specified the soap should be delivered within 24 hours after the receipt of each order, and that no deliveries were to be made until specific orders were received by the plaintiff.

There was a further provision to the effect that if the contractor failed or refused to make delivery within the time specified the Government "may by a notice in writing to the contractor terminate the performance of work under this contract in whole or in any part."

It was further stipulated that in the event defendant exercised its right to terminate it might purchase in the open market articles or services similar to those called for by the contract and charge the excess cost to the contractor, provided the contractor should not be charged with any liability if such default or failure was due to causes beyond its control and without its fault or negligence. The several causes that would excuse plaintiff and the conditions under which it would be excused from the obligation are set out in finding 7. Two of these causes that would excuse plaintiff from the obligation were (1) strikes and (2) "delays of a subcontractor or supplier in furnishing material or supplies owing to causes beyond the control and without fault or negligence of the Contractor unless the Contractor could reasonably have secured the materials and supplies from other sources."

The contract contained a further provision that all disputes concerning questions of fact which might arise should be decided by the contracting officer whose decision should be final unless appeal was made to the Secretary of the Navy within 30 days from receipt of such decision.

About June 22, 1950, plaintiff shipped a railroad car lot of 40,000 pounds of laundry soap to a warehouse in San Fran-

cisco, California, pursuant to the terms of the contract. Between July 1 and 24, 1950, orders were placed by the Navy against this shipment and deliveries were made in amounts totaling somewhat less than 40,000 pounds. On July 24 the Navy placed an order for 10,000 pounds of soap pursuant to the contract, but this order was not filled and plaintiff's warehouse agent advised the Navy that the soap was temporarily unavailable. On August 1, 1950, the Navy notified plaintiff's agent that the requirement still existed and that if performance was not made within 24 hours the contract would be terminated. The soap was not delivered by August 3, 1950, and on that date the contract was terminated pursuant to Article 15 of the general provisions of the contract.

By letter of that date, August 3, 1950, the Navy advised plaintiff that a replacement contract would be made as soon as possible, and that until such a contract should be made the Navy would purchase on a spot basis its immediate needs, including the 10,000 pounds requested on July 24, 1950, and that plaintiff would be notified of the excess cost.

The plaintiff on August 5, 1950, replied that its failure to supply the requested soap resulted from a stepped-up demand by the Navy caused by the Korean war and a deficiency of alkalies used in the production of the soap caused by strikes within the plants of plaintiff's suppliers, and that these factors were beyond plaintiff's control. The Navy's contracting officer did not consider the reasons for nondelivery by plaintiff to be beyond its control and refused to accept any further shipments from plaintiff.

Thereafter the contracting officer purchased from time to time 82,350 pounds of replacement soap from other producers at a net excess cost of $2,046.21 above the stipulated unit price. The Navy charged this excess cost against the plaintiff and this amount was withheld by the defendant from other sums admittedly due the plaintiff.

The plaintiff sues for a recovery of this amount.

The plaintiff strongly insisted that its failure to have on hand sufficient soap to fill the order was due to strikes in the plants which processed and furnished the type of dense soda ash required in the manufacture of soap and that this situation was beyond the control of the plaintiff. The contracting officer found as a fact that the causes of the delay were not beyond plaintiff's control. Plaintiff did not appeal such finding. .

■ The plaintiff insists that this was a unilateral contract; that the defendant only obligated itself to purchase soap in the aggregate value of $10, and that this consideration was not sufficient to bind the plaintiff to deliver such indefinite amounts from time to time as the defendant might see fit to order, and that the contract therefore lacked mutuality. However, we find that the contract was enforceable to the extent that it had been performed when the contracting officer elected to terminate it. Willard, Sutherland & Company v. United States, 262 U.S. 489, 494, 43 S.Ct. 592, 67 L.Ed. 1086; William C. Atwater & Company, Inc., v. United States, 262 U.S. 495, 43 S.Ct. 595, 67 L.Ed. 1089; Annotation 26 A.L.R.2d 1146, 1160. In the Willard, Sutherland case a contract was made for the purchase of coal by the Government at a stated price per ton which did not require the Government to take or limit its demand to any ascertainable quantity. We quote from the opinion in that case, 262 U.S. at pages 493, 494, 43 S.Ct. at page 594:

"There is nothing in the writing which required the Government to take, or limited its demand to, any ascertainable quantity. It must be held that, for lack of consideration and mutuality, the contract was not enforceable. * * *

"While the contract at its inception was not enforceable, it became valid and binding to the extent that it was performed."

While in the above case the plaintiff was suing on the entire contract and the contract was held void for lack of mutuality except to the extent performed, the

same reasoning applies to the case at bar. The defendant cites the case of Sylvan Crest Sand & Gravel Company v. United States, 2 Cir., 150 F.2d 642. We do not think the decision in that case is applicable to the facts in the instant case.

 It is difficult to avoid the conclusion that the contracting officer made a mistake in holding that under the terms of the contract the plaintiff was not excused in failing to deliver the 10,000 pounds of soap ordered on July 24, 1950, because of conditions beyond its control. However, since plaintiff failed to appeal the decision of the contracting officer it is, under the terms of the contract, bound by that decision. While the contracting officer's decision was apparently almost in the teeth of the facts, there is not enough in the record to justify a finding that his decision was arbitrary, capricious or so grossly unfair as to imply bad faith. We hold, therefore, that under this decision which was not appealed, the plaintiff was obligated to furnish the 10,000 pounds of soap which were procured from other sources by defendant at an excess cost of $234.

However, for the Government to undertake to charge the plaintiff with the excess cost of procuring 82,350 pounds of replacement soap which had not even been ordered and which, because of the termination of the further performance of the contract, plaintiff was not even given a chance to deliver, is too much like exacting the pound of flesh.

This is clearly a separable contract, enforceable only to the degree that it was performed or that the soap was ordered. Plaintiff was given no assurance at any time that any soap would be ordered except as ships might come in from time to time within the period and need the soap, and even in such instances the amount of the specific orders would not be definite until the amount of the ship's needs was disclosed.

If the case were before us on the facts shown by the evidence we would be inclined to allow the plaintiff recovery of the full amount claimed, $2,046.21, but since the plaintiff failed to appeal the contracting officer's decision as to the 10,000 pounds of soap which were specifically ordered on July 24, 1950, we have no choice but to hold the plaintiff liable for failure to deliver this specific amount that was made definite and certain by the order. We hold, however, that the defendant was not justified in exacting from the plaintiff the excess cost on the balance of the estimates which at the time of the termination of the performance of the contract were wholly indefinite and unascertainable. It would be a rank injustice to hold otherwise.

The plaintiff is entitled to recover the sum of $1,812.21.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.