**DAVIS/HRGM JOINT VENTURE, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 01–414 C.**

United States Court of Federal Claims.

Oct. 15, 2001.

Frank K. Peterson, Washington, DC, counsel of record for plaintiff. Andrew W. Stephenson and Craig A. Holman, of counsel.

Patricia A. Smith, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Kathryn A. Bleecker, Assistant Director; David M. Cohen, Director; and Stuart E. Schiffer, Acting Assistant Attorney General.

Walter A.I. Wilson, Washington, DC, counsel of record for defendant-intervener.

Lawrence M. Prosen, Washington, D.C., counsel to defendant-intervener, Hess Construction Company.

**OPINION**

DAMICH, Judge.

**I. Introduction**

This is a post-award bid protest in which Davis/HRGM (hereinafter "Plaintiff"), seeks to enjoin the United States Army Corps of Engineers (hereinafter "Defendant") from proceeding with a contract for the modernization of the Myrtilla Miner Elementary School in the District of Columbia. Plaintiff protests the decision to award the contract to the Intervener, Hess Construction, because the contracting officer: (1) failed to comply with regulation and solicitation criteria by awarding the contract to someone other than a responsible offeror who submitted the lowest bid; (2) improperly terminated Plaintiff's contract for convenience; and (3) incorrectly terminated the contract to Plaintiff despite

the contracting officer's earlier decision that Davis/HRGM was a responsive bidder.

This matter is before the Court on Defendant's partial motion to dismiss and the parties' cross-motions for judgment upon the administrative record. Oral argument was held. After argument, Plaintiff filed a motion to supplement its opposition to Defendant's motion for judgment on the administrative record along with a declaration from Eugene P. Dessureau. Defendant and Intervener filed a response.

After careful consideration, it is hereby ORDERED that Defendant's partial motion to dismiss is GRANTED as to Count II and the portion of Count III relating to the termination for convenience claim. Defendant's motion for judgment upon the administrative record as to the remaining counts is GRANTED. Intervener's motion for judgment upon the administrative record is GRANTED. Plaintiff's cross-motion for judgment upon the administrative record is DENIED. The declaration of Eugene P. Dessureau is stricken from the record as it is an improper attempt to supplement the administrative record.

## II. Factual Background

On May 2, 2001, the Corps issued Invitation for Bid No. DACW31–01–B–0018 for the modernization of the Myrtilla Miner Elementary School. According to the Request for Qualifications (RFQ), an award would be made to the "lowest priced responsive and responsible bidder." AR 12. The Invitation For Bids (IFB) called for the submission of bids by May 22, which later was amended to May 23, 2001. The solicitation also contained the following clause:

52.0228–4007 INFORMATION REGARDING BIDDING MATERIAL, BID GUARANTEE/BONDS

(a) BID BONDS: (Applicable only if bid/contract is $25,000 or greater). Each bidder shall submit with his bid a Bid Bond (Standard Form 24) with good and sufficient surety or sureties acceptable to the Government, or other security as provided in FAR 52.0228.0001, Bid Guarantee, in the form of twenty percent (20%) of the bid price or three million dollars ($3,000,-

000), whichever is less. The bid bond may be expressed in terms of a percentage of the bid price or may be expressed in dollars and cents.

AR 170.

On May 23, 2001, Plaintiff submitted its bid. The offeror identified on Plaintiff's bid was Davis/HRGM Joint Venture, and it was signed by Gary L. Ball, Construction Executive. AR 280. The bid bond included with the bid, however, identified the principal as James G. Davis Construction Corporation rather than Davis/HRGM Joint Venture and was signed by Dennis Cotter, Executive Vice President. AR 336a. Additionally, the Bid Bond identified the principal as a corporation, not a joint venture. AR 336a.

A total of 4 bids were received by the deadline. The bidders were:

| | | |
|---|---|---|
| 1. | Sigal Construction Corporation | $16,634,800.00 |
| 2. | Hess Construction Company | $15,508,580.00 |
| 3. | Coakley Williams | $16,367,000.00 |
| 4. | Davis/HRGM Joint Venture | $15,195,927.00 |

AR. 492. Plaintiff's bid amount of $15,195,927 was $312,653 less than the next lowest bidder, Hess Construction Company. *Id.* Plaintiff, in submitting its bid, did not total the individual price line items. AR 281–82. As a result, the contracting specialist by telegram asked Plaintiff to verify that its total bid price was $15,195,927. AR 373. In response, Plaintiff, via facsimile, confirmed its bid amount of $15,195,927.00.

On May 23, 2001, the Corps' Board of Award, consisting of representatives from the Contracting Division, Small Business Office, Office of Counsel, Construction Division, Engineering Division, and Programs and Project Management Division reviewed the bids. AR 493. It was determined that Plaintiff was the low bidder and met the requirements of the solicitation. *Id.* The Board of Award recommended to the District of Columbia Public Schools that the contract be awarded to Plaintiff. *Id.* On May 23, 2001, after receiving approval from the District of Columbia Schools, the contract was awarded to Plaintiff. *Id.*

On May 29, 2001, Plaintiff submitted performance and payment bonds for the awarded contract. AR 417–32. The principal identified on both bonds was Davis/HRGM

Joint Venture with Dennis Cotter, Executive Vice President, and Ramesh Butani, President HRGM, executing the bonds on behalf of the principal. AR 418, 420. The type of organization identified was a joint venture. *Id.* On June 6, 2001, the bonds were returned to Plaintiff because they were found incomplete because the power of attorney contained an undated certificate. AR 416. Plaintiff contends it corrected the defect and resubmitted the bonds the next day. The contracting officer indicates that Plaintiff submitted performance and payment bonds. AR 498.[1]

On May 23, 2001, the intervener, the second lowest bidder, filed a protest with the Department of the Army, Baltimore District, contending that the Davis/HRGM bid was non-responsive because of the bidder's failure to complete all bid items in its price proposal. AR 388. The protest was denied on June 4, 2001. Division Counsel found that the omission of total bid prices did not render Davis/HRGM's bid non-responsive but rather constituted an "informality" that could be waived because the total bid amounts were ascertainable from the face of the bid. AR 396.

On June 7, 2001, Hess filed another protest with the Department of the Army, Baltimore District, in which it asserted that: (1) the bid bond submitted by Davis/HRGM was defective because the principal identified in the bid bond, i.e., James G. Davis Construction Co., was not the same entity as the bidder identified in the bid, i.e., Davis/HRGM; (2) the bid bond amount was insufficient; and (3) Davis/HRGM was not a pre-qualified bidder under step one of the procurement, and, as a result could not compete in the second step. AR 433–34.

The Contracting Officer issued a Stop Work Order on June 12, 2001. AR 435.

On July 2, 2001, Division Counsel issued an agency decision in which it determined that the second protest was untimely. AR 510.

The protest was dismissed. *Id.* However, in his decision Division Counsel discussed the merits of Hess's arguments. Despite the fact that the Report of the Contracting Officer observed that the contracting officer had concluded that the bid bond was responsive and that, in any event, the issue had been "overcome by circumstances" (i.e., the submission of payment and performance bonds, AR 498), Division Counsel stated:

> There is no question that the bidder is the joint venture. The problem is that the bid bond was in the name of James G. Davis Construction Corporation, a corporation, not the joint venture. More importantly, there was nothing in the bid package at the time of bid opening to indicate that the surety knew the bidder was a joint venture and not the named corporation. Recognizing the absence of this information, Davis/HRGM's surety—after the opening bid—provided a June 14, 2001 letter stating that the surety would be liable for the joint venture. Material defects in bid bonds cannot be corrected after bid opening since this would afford the bidder the option of accepting or rejecting award by either correcting or not correcting the defect and would be inconsistent with integrity of the sealed bidding system. *Western Management Services, Inc.; Mac–Bestos, Inc.,* B–266147; B–270153, January 23, 1996, 96–1 CPD ¶ 17 at 4, 1996 WL 23291. *See also Hydro–Dredge Corp.,* B–214408, April 9, 1984, 84–1 CPD ¶ 400, 1984 WL 44162.

AR 509–10. Division Counsel further stated:

> An award to a non-responsive bidder is void ab inition [sic]. *Albano Cleaners, Inc. v. United States,* 197 Ct.Cl. 450, 455 F.2d 556 (1972); *Prestex, Inc. v. United States,* 162 Ct.Cl. 620, 320 F.2d 367 (1963). The contract should be termination [sic] for convenience (TFC) unless there is a compelling governmental reason not to do so.

---

1. The contracting officer's report stated:

Moreover, a bid bond ensures that a bidder will, if required, execute a written contract and furnish payment and performance bonds. *Hydro–Drege Corp.,* B–214408, April 9, 1984, 84–1 CPD ¶ 400, 1984 WL 44162. The surety's bid bond obligations are satisfied when acceptable payment and performance bonds are provided

and the Government executes the contract. Here, the contract has been executed and Davis has submitted its performance and payment bonds. Arguably, based on the principle stated above, the issue of whether the surety is bound by the bond has been overcome by circumstances.
AR 498.

In determining whether to recommend TFC, the Contracting Officer should consider the seriousness of the protest deficiency, the degree of prejudice to other bidders or to the integrity of the competitive procurement system, the good faith of other parties, the extent of performance, the cost to the government, and the urgency of the agency's mission may be considered. *American Sterilizer Company*, 64 Comp. Gen. 868 (1985), 85–2 CDP ¶ 313, 1985 WL 50788 (B–219021, September 20, 1985).

AR 510. By letter of July 10, 2001, the contracting officer notified Plaintiff that its contract was terminated for convenience. AR 514–18. There is no indication in the administrative record that the contracting officer considered the factors mentioned above. Nor is there any indication that Defendant conferred with the District of Columbia Public Schools with respect to the termination of Plaintiff's contract. The contracting officer notified Hess by letter of July 13, 2001 that its bid had been accepted for the Myrtilla Miner Elementary School renovation. AR 520–22.

Plaintiff filed this protest on July 17, 2001. In a bench ruling on July 18, 2001, this Court granted Plaintiff's motion for a temporary restraining order. In light of the agreement reached between the parties and the government's representation that the Army Corps of Engineers agreed to stay performance of the contract at issue until a final decision on the merits, the Court vacated the temporary restraining order in the Court's Order of July 19, 2001.

### III. Jurisdiction

 The Court of Federal Claims has jurisdiction to review post-award bid protests pursuant to 28 U.S.C. § 1491(b) which provides in relevant part:

[the] Court of Federal Claims ... shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract . . . .

28 U.S.C. § 1491(b)(1). The statute also provides that post-award bid protest actions are reviewed according to the standards set forth in the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4). A reviewing court shall set aside agency actions determined to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A bid award may be set aside if either: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed.Cir.2001). The Federal Circuit further explained:

When a challenge is brought on the first ground, the courts have recognized that contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them" in the procurement process. *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir.1994). Accordingly, the test for reviewing courts is to determine whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *id.*, and the "disappointed bidder bears a "heavy burden" of showing that the award decision "had no rational basis." " *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C.Cir.1994). When a challenge is brought on the second ground, the disappointed bidder must show "a clear and prejudicial violation of applicable statutes or regulations." *Kentron [Hawaii, Ltd. v. Warner]*, 480 F.2d [1166] at 1169 [(D.C.Cir.1973)]; *Latecoere [Intern. v. U.S. Dept. of Navy]*, 19 F.3d [1342] at 1356 [(11th Cir.1994)].

*Id.* at 1332–33. The scope of judicial review is limited to the administrative record. *Impresa*, 238 F.3d at 1338.

### IV. Partial Motion to Dismiss

#### A. Standard of Review

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the

pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989). Plaintiff bears the burden of establishing jurisdiction over its complaint. *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988).

### B. The Court Cannot Review a Termination For Convenience Claim Under the Bid Protest Statute.

■ Pursuant to the Court's bid protest statute, an interested party objecting to a solicitation, a proposed award, or an award, may bring an action directly in the Court of Federal Claims. 28 U.S.C. § 1491(b). In this case, Defendant argues that Count II and a portion of Count III of the complaint, which relates to the contracting officer's decision to terminate the contract for convenience, is outside the Court's bid protest jurisdiction. According to Defendant, all challenges to the termination of Plaintiff's contract for convenience must be brought under the Contract Disputes Act (CDA) of 1978. In other words, Defendant contends that Plaintiff was required to file a claim with the contracting officer prior to filing suit in this Court. Relying only on *Forestry Surveys and Data v. United States,* 44 Fed.Cl. 485 (1999), Plaintiff contends that this Court has jurisdiction to consider all of its claims, including the termination for convenience. The Court disagrees with Plaintiff's position.

The Court holds that Count II and the portion of Count III relating to the termination for convenience claim are not within the Court's bid protest jurisdiction because the claims involve a dispute arising out of the contract between the parties, and therefore must be brought under the CDA. In the present situation, the contracting officer, by letter of July 10, 2001, terminated the contract for convenience by invoking clause 52.249-2 of the contract. AR 514-19. The termination for convenience clause incorporated into the contract prescribed by regulation provides, in relevant part, that the "Government may terminate performance of work under this contract ... if the Contracting Officer determines that a termination is in the Government's interest." 48 C.F.R. § 52.249-2. Plaintiff's challenge to the termination for convenience does not fall within the express language of § 1491(b) because it does not relate to an interested party's objection to a solicitation, a proposed award, or an award. Additionally, Plaintiff has failed to point to any case law supporting its position that this Court can consider its termination for convenience claim under its bid protest statute.

Plaintiff's reliance on *Forestry Surveys and Data v. United States,* 44 Fed.Cl. 485 (1999) is misplaced. In *Forestry,* a disappointed bidder filed a post-award bid protest in the Court of Federal Claims challenging the award of a contract for a timber stand exam. *Id.* at 488. The plaintiff, among other things, argued that the government had improperly evaluated its past performance by concentrating on only one of five contracts listed by the plaintiff in its offer. *Id.* The court rejected the government's contention that the plaintiff was requesting relief from the prior contract. *Id.* at 491. The court held that the claim fell within the bid protest jurisdiction because the plaintiff's challenge was limited to the use of an evaluation of that prior contract in the award of the protested contract and in consideration of future contracts. *Id.*

The present situation is distinguishable. Unlike in *Forestry,* Plaintiff in Count II and in a portion of Count III clearly challenges the contracting officer's decision to terminate its contract for convenience. The current situation is not a case in which a prior contract was used to evaluate the award of the protested contract. Furthermore, there is no indication in *Forestry* that the plaintiff had at any time been awarded the contract, and subsequently terminated for convenience. As a result the case is inapposite.

During oral argument, Plaintiff also argued that the present situation was similar to *CCL, Inc. v. United States,* 39 Fed.Cl. 780

(1997). In that case, the plaintiff alleged that the government violated the Competition in Contracting Act (CICA) by failing to engage in competitive procurement for additional work found to be outside the scope of an existing contract between the government and another contractor. *Id.* at 789. In other words, the additional work should have been the subject of a solicitation. The court rejected the government's contention that the dispute involved the administration of an existing contract. *Id.* In discussing the bid protest jurisdiction, the court stated:

> The new language [of § 1491(b)] permits both a suit challenging government action which is self-consciously a competitive procurement as well as what CCL is claiming here: that DISA [the government] is procuring goods and services through a process that should have been the subject of competition; and that the failure to compete that procurement is in violation of law. The statute is therefore plainly invoked.

*Id.* Thus, the court found it possessed jurisdiction over plaintiff's claim. *Id.* Plaintiff fails to explain how CCL supports its position that this Court has jurisdiction under its bid protest statute to consider the termination for convenience claim. Nor can this Court discern how the case supports Plaintiff's position.

In *Ingersoll–Rand Co. v. United States,* 780 F.2d 74 (D.C.Cir.1985), cited by Defendant, the United States Court of Appeals for the District of Columbia Circuit affirmed the lower court's holding that it lacked jurisdiction over a termination for convenience claim brought under its bid protest statute. The Court of Appeals stated that the plaintiff was not "a disappointed bidder seeking to void the award of a contract to another; instead, it complains of wrongful termination of its own contract with the government." *Id.* at 79. The court found that the plaintiff's claims were contractual in nature and subject to the CDA. *Id.* at 80. The court explained that the plaintiff could not avoid the jurisdictional bar of the CDA by alleging that the termination violated certain regulations rather than constituting a breach of contract. *Id.* at 77.

The Court finds the reasoning in *Ingersoll–Rand Co.* persuasive. Here, Plaintiff clearly challenges the termination of its contract. Plaintiff's characterization of the contracting officer's decision to terminate the contract as violating regulations or irrational and arbitrary does not bring the claim within this Court's bid protest jurisdiction.

The CDA provides in pertinent part that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision .... The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter." 41 U.S.C. § 605(a) (1996). Here, the challenge to the termination for convenience relates to Plaintiff's previous contract with the government. Under the CDA, Plaintiff was required to file a claim with the contracting officer prior to filing suit in this Court. Because Plaintiff has not availed itself of this process, this Court lacks jurisdiction over Count II and a portion of Count III relating to the termination for convenience claim.

## V. Standard for Cross–Motions for Judgment on the Administrative Record

The Court next turns to the issue of whether the contracting officer's decision to award the contract to Hess, the intervener, was arbitrary, capricious, or in violation of law. The parties have cross-moved for summary judgment. Motions for judgment upon the administrative record, pursuant to Rule 56.1 of the Rules of the Court of Federal Claims, are treated as motions for summary judgment under Rule 56(a). *Nickerson v. United States,* 35 Fed.Cl. 581, 588 (1996) *aff'd,* 113 F.3d 1255 (Fed.Cir.1997) (table). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Sec'y, DHHS,* 998 F.2d 979 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The party moving for sum-

mary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The fact that both parties have moved for summary judgment is not an admission that no material facts remain in issue. *Massey v. Del Labs., Inc.,* 118 F.3d 1568, 1573 (Fed.Cir. 1997). *See also Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir. 1988). Summary judgment will not necessarily be granted to one party or another simply because both parties have moved for summary judgment. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992). A cross-motion is a party's claim that it alone is entitled to summary judgment. *A Olympic Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 518 (1995). It therefore does not follow that if one motion is rejected, the other is necessarily supported. *Bubble Room, Inc. v. United States,* 159 F.3d 553, 561 (Fed.Cir.1998). Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Cincom Systems, Inc. v. United States,* 37 Fed.Cl. 663, 671 (1997).

## VI. Whether the Decision to Award the Contract to Hess Was Arbitrary, Capricious, or in Violation of Regulations and Solicitation Criteria

As a result of the Government's action in this case, the District of Columbia is being forced to spend $312,653.00 more than initially expected to construct a public school because of a technicality in a bid bond that was no longer in effect at the time the agency protest that resulted in Plaintiff's loss of the contract was filed, and where the government suffered no injury. Furthermore, the protester, the lowest bidder, is a minority contractor and one that is preferred by the Army Corps of Engineer's client, the District of Columbia Public Schools. AR 512.

Nevertheless, the Court is constrained to hold that Defendant's decision to award the contract to Hess based on Division Counsel's determination that Plaintiff's bid was non-responsive due to a defect in the bid bond discovered after expiration of the bid bond was not arbitrary, capricious, or in violation of law.

The RFQ advised bidders that the contract would be awarded to the "lowest priced responsive and responsible bidders." AR 12. Under FAR § 14.408–1, "the contracting officer shall make a contract award ... to that responsible bidder whose bid, conforming to the invitation, will be most advantageous to the Government, considering only price and the price-related factors ... included in the invitation." 48 C.F.R. § 14.408–1.

The decision to award the contract can only be set aside if the Court determines that the contracting officer's decision lacked a rational basis or violated a regulation or procedure. It is not the role of the Court to substitute its own judgment for that of the contracting officer. *Griffy's Landscape Maint. LLC v. United States,* —— Fed.Cl. ——, ——, No. 01–309C, 2001 WL 945389, at *8 (Fed.Cl. Aug.17, 2001). In order to make this determination, the Court must examine the contracting officer's basis for awarding the contract to Intervener, which in the context of this case becomes an examination of why Plaintiff, the lowest priced bidder, was judged to be non-responsive. Here, however, the contracting officer did not provide a written explanation in the record for either his decision to terminate for convenience or for his decision that Plaintiff's bid was non-responsive. Defendant argues that the decision was based on Division Counsel's reasoning in the post-award agency protest brought by Hess Construction, the intervener in this case, which resulted in the termination of Plaintiff's contract by the government for convenience and the award of the contract to Hess. Plaintiff argues that, because the contracting officer did not give reasons, his judgment is not sustainable on the record.

Although there is no written explanation in the record as to the contracting officer's reasoning in terminating the contract and in determining that Plaintiff's bid was non-responsive, his reasoning may be inferred from the advice of Division Counsel. The Corps' agency protest process provides an independent review at a level above the contracting

officer, namely, by the Chief Counsel, but the Chief Counsel is authorized to delegate this authority to Division Counsels. Engineer FAR Supplement (EFARS) § 33.103(c)(1), (2).

Although Division Counsel dismissed Hess's bid protest as untimely, he found that the bid bond was defective and that Plaintiff's bid was non-responsive. As far as the Division Counsel's decision referenced the contracting officer's report, recommended termination for convenience, and directed the contracting officer to consider certain factors in making his decision to terminate, it is likely that the contracting officer adopted at least the conclusions of the Division Counsel that the bid bond was defective and that Plaintiff's bid was non-responsive, because he terminated the contract. (The contracting officer, in his report to Division Counsel, had found that the bid bond did not render Plaintiff's bid non-responsive and had recommended against termination. AR 498.) Thus, the Court will review Division Counsel's reasoning in recommending termination for convenience, not to judge the reasonableness of the termination for convenience (over which the Court does not have jurisdiction[2]), but because Division Counsel's recommendation is the only evidence in the record of the reasoning of the contracting officer that Plaintiff was not the lowest responsive bidder.

### A. Was the Bid Bond Defective?

■ A bid is responsive when it "represents an unequivocal offer to provide requested supplies or services at a firm, fixed price." *Cline Enters.*, B–252407, June 24, 1993. In the sealed bidding process, a contracting officer is required to reject a bid that "fails to conform to the essential requirements of the invitation for bids." 48 C.F.R. § 14.404–2(a). The regulation also provides in relevant part that "[w]hen a bid guarantee is required and a bidder fails to furnish the guarantee in accordance with the requirements of the invitation for bids, the bid shall be rejected, except as otherwise provided in 28.101–4." 48 C.F.R. § 14.404–2(k).[3]

In this case, the solicitation required each bidder to submit with its bid a "Bid Bond (Standard Form 24) with good and sufficient surety or sureties acceptable to the Government ... in the form of twenty percent (20%) of the bid price or three million dollars ($3,000,000), whichever is lesser." AR 170. Here, Plaintiff submitted a bid for the Myrtilla Miner Elementary School under the name of Davis/HRGM, a joint venture. AR 280. The bid bond included with its bid, however, named James G. Davis Construction Corporation as the principal on the bond. AR 336a. The principal was specified as a corporation on the bond and was signed by Dennis Cotter, Davis's construction executive. *Id.* HRGM is not mentioned anywhere on the bid bond. Defendant and Intervener contend that the discrepancy between legal entities on the bid and the bid bond renders Plaintiff's bid non-responsive.

■ "When a bid bond is alleged to be defective ... the determinative issue is whether the surety has sufficiently manifested an intention to be bound under the IFB so that the bid bond would be enforceable by the government in the event of a default by the contractor." *PCI/RCI v. United States*, 36 Fed.Cl. 761, 773 (1996). In *Martina Enterprises*, B–250766, 92–2 CPD ¶ 266, 1992 WL 328753 (Oct. 21, 1992), cited by both Defendant and Intervener, the Comptroller General determined Martina's bid to be non-responsive because the legal entity identified on the bid, a joint venture, was different than the legal entity identified on the bid bond, a corporation. The Comptroller General reasoned that because a corporation was named as principal in the bid bond the surety is not necessarily bound if the joint venture fails to execute the contract upon acceptance of its

---

2. See discussion *supra*.

3. Section 28.101–4 enumerates *certain circumstances* in which non-compliance with the bid guarantee can be waived. Such instances include but are not limited to when only one offer is received, the bid guarantee is received late and late receipt is waived, an otherwise acceptable bid is submitted with a signed bid but the bid bond is not signed, or an otherwise acceptable bid bond is incorrectly dated or bears no date. 48 C.F.R. § 28.101–4(c). None of the exceptions apply in this case.

bid or fails to provide acceptable performance or payment bonds. *Id.* at 2.

█ Similarly in this case, a discrepancy existed between the legal entities in the bid and the bid bond. The bid was in the name of the joint venture while the bid bond named a corporation. The only information in the bid package offered to show that Davis intended to bid the procurement as Davis/HRGM Joint Venture is the signature of Dennis Cotter both as head of the joint venture and on the bid bond and the same address listed both on Standard Form 1442 for the joint venture and on the corporation's bid bond. AR 498. This information is insufficient to show that the joint venture and the corporation are the same legal entity because it fails to establish an intent to bind the corporation for the joint venture. As the Comptroller General stated in *Harris Excavating*, B–284820, 2000 CPD ¶ 103, 2000 WL 760327 (June 12, 2000), cited by Plaintiff, the proper question is whether the bidder and bid bond principal are the same legal entity to ensure "that the surety will be obligated under the bond to the government in the event that the bidder withdraws its bid within the period specified for acceptance or fails to execute a written contract or furnish required performance and payment bonds." *Id.* at 4. The common signature and address create an ambiguity, but this alone is not enough to warrant the assumption that the joint venture and corporation are one entity. *See Atlas Contractors, Inc.*, B–208332, 83–1 CPD ¶ 69, at 2, 1983 WL 26376 (holding that same signature on corporation's bid and joint venture's bid bond create an indefiniteness as to whether distinct legal entities are involved that contracting officer is under no obligation to clarify). In this case, as in *Martina*, it cannot be determined that the surety would be bound in the event the bidder failed to

execute the contract or submit acceptable performance and payment bonds.

While Plaintiff relies on *Martina* and *Harris Excavating* to support its argument that the government was in fact protected by the bid bond, it mainly relies on *PCI/RCI v. United States*, 36 Fed.Cl. 761, 773 (1996), a case that is distinguishable from the case at bar. In *PCI/RCI*, the Court addressed the issue of whether one co-venturer could execute a bid bond on behalf of the entire joint venture. The court held that where a joint venture acting in the ordinary course of business contracted with the surety, the bid bond signed by one co-venturer did not render the bid non-responsive. This is based on the general principle that "each member of a joint venture has the authority to act for and bind the enterprise, absent agreement to the contrary." *Id.* at 769. In *PCI/RCI*, the bid bond was in the joint venture's name as principal. The present situation differs from *PCI/RCI* because here the legal entity in the bid bond is a corporation, not a joint venture. As a result, this case does not establish that the government was adequately protected under the bid bond for HRGM's potential liabilities on the bid. Plaintiff's reliance on *PCI/RCI* is misplaced.[4] The contracting officer acted within his discretion in rejecting Davis/HRGM because its bid was non-responsive.

B. Whether the Defectiveness of the Bid Bond Is a Moot Issue

Plaintiff contends that the adequacy of the bid bond became a moot issue when the contract was executed and the relevant performance and payment bonds were submitted. In contrast, Defendant and Intervener argue that the issue of whether a bid is non-responsive is determined at bid opening and that any defect cannot be waived by the

---

4. Plaintiff also cites numerous state cases in support of its argument that the government was protected under the bid bond. The Court agrees with Defendant and Intervener that the state cases are not applicable to this case. *See Transamerica Insurance Co. v. United States*, 6 Cl.Ct. 367, 371 (1984)("federal contracts are controlled by federal law, and not state law"); *see also Shackelford Mechanical, Inc.*, B–261,948, November 1, 1995, 95–2 CPD ¶ 203, 1995 WL 640750 (Comp.Gen.) (Internal citations omit-

ted.)("Agencies generally must be able to ascertain the adequacy of a bid bond solely from the documents submitted at bid opening. As a result, uniform federal regulations exist to ascertain the sufficiency of bid bonds; ignoring these uniform regulations to require that agencies instead attempt to determine whether bidders have furnished adequate bid guarantees under the laws of an individual state would detract from the agencies' ability to promptly and definitively determine the adequacy of bid bonds.").

contracting officer. Furthermore, Defendant and Intervener contend that a defect in the bid cannot be corrected by subsequent communications or submissions, including the submission of payment and performance bonds.

The principal case relied on by Defendant is *Toyo Menka Kaisha v. United States*, 220 Ct.Cl. 210, 597 F.2d 1371 (1979). *Toyo Menka* concerned why a contract could be disclaimed by the government because it had been agreed to on terms different from those of the invitation for bids. It did not concern a bid protest, as such. Because this Court is not deciding whether a contract should be terminated because it did not comply with the invitation for bids, *Toyo* is of limited utility.[5]

Unfortunately, though, even if the payment and performance bonds moot the defective bid bond issue, it is difficult to see how the Court can focus on the payment and performance bonds on the contract when the contract was terminated for convenience. Just as the Court cannot ignore the reality that payment and performance bonds have been submitted,[6] it cannot ignore the reality that a contract no longer exists. What is the relevance, then, of payment and performance bonds submitted pursuant to a contract that no longer exists? When the contract was terminated, there was no longer a requirement to submit payment and performance bonds-bonds to insure the payment and performance of what? The mootness of the defective bid bond issue was highly relevant to whether the contract should be terminated for convenience, and this Court thinks that terminating the contract under the circumstances of this case was-frankly-a ridiculous exaltation of bureaucratic punctilio over prac-

ticality. But the Court cannot review the termination for convenience, and, even if it could, it is doubtful that the high standard for overturning a termination for convenience would be met.

Thus, if the contract is ignored, the decision of the Corps to award the contract to Hess is not arbitrary or capricious or contrary to law-albeit contrary to common sense.[7] There being no contract, the Corps had before it two bids, one at a lower price but with a defective bid bond, the other at a higher price without this defect. The Corps chose the lower *responsive* bidder, Hess.

## VII. Conclusion

Because the Court lacks jurisdiction over the termination for convenience claim and because the Corps did not act arbitrarily, capriciously, or in violation of the law in awarding Hess the contract, the Defendant's partial motion to dismiss as to Count II and the portion of Count III relating to the termination for convenience claim is GRANTED. Additionally, Defendant's motion for judgment upon the administrative record as to the remaining counts is GRANTED. Intervener's motion for judgment upon the administrative record is also GRANTED. Plaintiff's cross-motion for judgment upon the administrative record is DENIED. The declaration of Eugene P. Dessureau is stricken from the record as it is an improper attempt to supplement the administrative record. The Clerk of the Court is directed to enter judgment, with prejudice, in favor of the Defendant and dismiss the complaint.

**IT IS SO ORDERED.**

---

5. It is interesting that *Toyo Menka* notes that the district court voided the non-responsive contract and ordered a resolicitation. *Toyo Menka*, 597 F.2d at 1375. This Court was intrigued by the possibility that the solicitation was at an end once the contract had been awarded, so that if the contract were terminated, a resolicitation was required. But the Court was unable to find any authority to that effect, even after receiving supplemental briefing.

6. The parties dispute whether the bid bond has expired. This question turns on whether accept-

able payment and performance bonds were submitted. The Court believes that acceptable payment and performance bonds were submitted, but this does not matter, because of the Court's holding that the termination for convenience renders the submission of acceptable payment and performance bonds irrelevant.

7. Because the Corps acted within its discretion, it is unnecessary for the Court to address the Plaintiff's request for injunctive relief.